UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22554-CIV-HUCK/O'SULLIVAN

ELISEO LA BRUNO,

    Plaintiff,

v.

MIAMI-DADE COUNTY, a political subdivision
of the State of Florida, PUBLIC HEALTH TRUST
OF MIAMI-DADE COUNTY, an agency and
instrumentality of Miami-Dade County,
TIMOTHY P. RYAN, individually, DANIEL MERA,
individually, SONIA GRANNUM, ARNP, individually,
and ROBERT GONZALEZ, M.D., individually,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS (D.E. #35)

Plaintiff Eliseo La Bruno brings this action pursuant to 42 U.S.C. § 1983 against Defendants Miami-Dade County, the Public Health Trust, Timothy P. Ryan, Daniel Mera, Sonia Grannum, ARNP, and Robert Gonzalez, M.D., for deliberate indifference to La Bruno's medical needs while La Bruno was incarcerated at the Miami-Dade County Pre-Trial Detention Center and the Miami-Dade County Training and Treatment Center. La Bruno also brings state law claims against Miami-Dade County and the Public Health Trust. This matter is before the Court on Defendants Miami-Dade County and the Public Health Trust's Motion to Dismiss Counts One, Two, Seven, and Eight of the Third Amended Complaint (D.E. #35). They maintain that La Bruno has failed to plead facts sufficient to support either his federal or state claims against Defendants. Defendants Timothy P. Ryan, Daniel Mera, Sonia Grannum, and Robert Gonzalez's Motion to Dismiss Counts Three, Four, Five and Six of the Third Amended Complaint (D.E. #36) is addressed in a separate Order (D.E. #60). For the following reasons, Defendants' Motion to Dismiss is denied.

1

## I.     RELEVANT FACTS

### A.     La Bruno's Experience

The facts regarding La Bruno's experience in the Pre-Trial Detention Center and the Training and Treatment Center relevant to Defendants Miami-Dade County and the Public Health Trust's Motion to Dismiss are virtually identical to those considered by the Court in its Order on Defendants Timothy P. Ryan, Daniel Mera, Sonia Grannum, and Robert Gonzalez's Motion to Dismiss Counts Three, Four, Five, and Six of the Third Amended Complaint. (Order D.E. #60 at 2)  Thus, the Court adopts its Statement of Facts from that Order.

### B.     Miami-Dade County and the Public Health Trust

La Bruno alleges that Miami-Dade County, though the Miami-Dade County Department of Corrections & Rehabilitation, is responsible for providing humane detention to individuals in its custody and is responsible for maintaining, staffing, and supervising all correctional activities in Miami-Dade County.  La Bruno alleges that the Public Health Trust is an agency and instrumentality of Miami-Dade County[1], and Corrections Health Services is a department within the Public Health Trust which provides health services to all pretrial detainees and inmates incarcerated in the Miami-Dade County Department of Corrections pursuant to Miami-Dade County Code of Ordinances, Chapter 25.  La Bruno further alleges that Public Health Trust supplied physicians, nurses, nurse practitioners, pharmacy services, and medical staff to the Miami-Dade County Department of Corrections & Rehabilitation and its facilities, including the Pre-Trial Detention Center and Training and Treatment Center, and provided medical care to individuals detained and incarcerated in Miami-Dade County, including La Bruno.

### C.     Notice of a Widespread and Longstanding Pattern

La Bruno alleges that, prior to his detention and subsequent incarceration in the Miami-Dade Department of Corrections, incidents occurred that put Miami-Dade County and the Public Health

---

[1] La Bruno contends that Miami-Dade County, as a political subdivision of the State of Florida, and the Public Health Trust, as an agency and instrumentality of Miami-Dade County, are both subject to the same analysis to determine § 1983 municipal liability.  Defendant does not dispute this contention.  *See Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1217 n.1 (S.D. Fla. 2007) ("The Public Health Trust of Miami-Dade County, Florida, was created and established by authority of Chapter 73-102, Laws of Florida 1973, as an agency and instrumentality of Miami-Dade County. . . . The Public Health Trust has the power to sue and be sued.  Miami-Dade County Code § 25A-4.").

Trust on notice of widespread acts of deliberate indifference to medical needs of inmates in the Miami-Dade County Department of Corrections, including the following:

    1.    Other inmates received inadequate medical treatment:

        a)    between 2004 and 2007, ten inmates, housed in four of the five Miami-Dade County Department of Corrections facilities, received inadequate medical treatment; and

        b)    certain county officials[2], including a County Commissioner, the County Manager, and the Mayor, knew—that inmates in the Miami-Dade County Department of Corrections were not receiving adequate medical care; through:

            (i)    inmate Miguel Gonzalez's communications, through his mother, to Miami-Dade County Commissioner Jimmy Morales, requesting assistance in getting the medical treatment for his facial and orbital fractures that had been denied;

            (ii)    County Manager George Burgess' receipt of the letter written by the Director of the Department of Corrections to Miguel

---

[2] In their Motion to Dismiss, Defendants contend that prior to January 26, 2007, when Miami-Dade County adopted the Strong Mayor Amendment to the Miami-Dade County Home Rule Charter, which made the Mayor of Miami-Dade County a final policymaker, the final policymakers for Miami-Dade County and the Public Health Trust were the Board of County Commissioners and the County Manager. Defendants contend that the change in the charter replaced the County Manager with the County Mayor as a final policymaker, making the only final policymakers for the County and the Trust the Board of County Commissioners and the Mayor. *See* Miami-Dade County Home Rule Charter § 1.01(A) ("Board of County Commissioners shall be the legislative and the governing body of the county [and] [t]he County shall have the power to carry on a central metropolitan government."); § 2.02 ( the "Mayor shall serve as head of the county government."); § 2.02(A) (the Mayor's responsibilities include "the management of all administrative departments of the County government and for carrying out policies adopted by the Commission.").

La Bruno asserts that "the County and Mayor Carlos Alvarez have appointed Timothy P. Ryan as the Director of the Department of Corrections, and delegated those duties to him." To the extent this allegation is as an assertion that Director Timothy Ryan is a final policymaker for Miami-Dade County and the Public Health Trust, the Court rejects it. The Court relies on Defendants' contention that the Mayor and Board of Commissioners are the current final policymakers for the County, since La Bruno does not offer any factual or legal support for his assertion, and since, prior to the replacement of the County Manager with the mayor as a final policymaker, the U.S. District Court for the Southern District of Florida had "on multiple occasions recognized that the final policymaking authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager." *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1221-24 (S.D. Fla. 2007); *Wilson v. Miami-Dade County*, 2005 WL 3597737, *8 (S.D. Fla. Sept.19, 2005); *see also Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1359-60 (S.D. Fla.1999) ("policymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion").

        Gonzalez's mother, after Commissioner Morales forwarded the Director Gonzalez's complaint, acknowledging her son's first follow-up appointment to address his facial and orbital fractures occurred eight months after his initial surgery;

  (ii)  inmate Cristobal Jimenez's complaints to County Manager George Burgess and Assistant County Manager Susanne Torriente, as well as the Mayor's Chief of Staff Dennis Morales, regarding his diabetes, need for insulin medication, and the Department of Corrections' failure to administer his necessary medication from beginning of 2005 through February 2006

  (iii)  inmate Earl Moffett's complaints, through his mother, to Mayor Carlos Alvarez[3] regarding the failure to provide medical treatment for a severe infection and renal dysfunction, including the failure of the Department of Corrections to comply with court orders compelling treatment.

  b)  four Miami-New Times articles written in 2004 discussed the MRSA[4] outbreak in the Miami-Dade County Department of Corrections[5] and the experiences of inmates who were infected with MRSA as a result of the outbreak but did not receive adequate treatment;

2.  a 2004 Miami New Times discussed the Dade County Medical Association's criticism of the Department of Corrections's choice of Chief Medical Compliance Officer, Dr. Robert Gonzalez, who was responsible for rendering determinations about the type of care and medications that inmates received, because Dr. Gonzalez's his medical license was revoked in 1987 for "gross or repeated malpractice," and "incompetency."

  a)  the article also criticized Miami-Dade County Department of

---

[3] Mayor Alvarez was considered a final policy maker for Miami-Dade County at the time of Moffett's complaints, as they occurred after January 26, 2007.

[4] MRSA is "a Methicillin-resistant Staphylococcus aureus infection . . . caused by a strain of staph bacteria that has become resistant to the antibiotics commonly used to treat ordinary staph infections." http://www.mayoclinic.com/health/mrsa/DS00735

[5] The MRSA outbreak in the Miami-Dade County Department of Corrections was the underlying infection that some of the inmates, whose experiences La Bruno alleges form part of a pattern of deliberate indifference to medical needs, suffered from.

4

      Corrections' response to a MRSA outbreak in the jail facilities because it did not follow the Miami-Dade County Health Department Office of Epidemiology and Disease Control's recommendations for controlling the outbreak;

3. a 2007 Miami New Times article reported that poor medical care in the Miami-Dade County Department of Corrections had contributed to multiple inmate deaths in the jails and that, in a letter to Director Timothy Ryan, a nurse employed by the Public Health Trust accused a high-ranking nurse of endangering inmates' health by not following proper techniques and procedures;

4. a Miami-New Times article reported that former Miami-Dade County Judge David Young repeatedly ordered the Miami-Dade County Department of Corrections to provide medical testing and care, but that his instructions were often ignored;

5. on March 6, 2007, Miami-Dade County adopted a resolution that directed the County Manager to report to the Board of County Commissioners on the status of HIV/AIDS testing, treatment, and follow-up care for Miami-Dade County's inmate population;

6. on April 5, 2008, the U.S. Department of Justice initiated an investigation into alleged civil rights violations in the Miami-Dade County Department of Corrections;

  a) The goal of the investigation was to determine if there were ongoing constitutional violations in the Miami-Dade County Department of Corrections.

  b) The focus of the investigation was to protect inmates from harm by insuring that, among other things, the Department of Corrections provided inmates with adequate medical care;

  c) in a subsequent Miami Herald article, Miami-Dade County Mayor Carlos Alvarez created a memoranda outlining a plan to correct problems at the jail in response to the Justice Department Investigation.

## II. LEGAL ANALYSIS

**A.** **Standard of Review**

On a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County*, 21 F. 3d 1531, 1534 (11th Cir. 1994). A complaint must contain enough "facts to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### B.     42 U.S.C. § 1983 Municipal Liability

The Court finds that La Bruno alleges facts sufficient to state a claim pursuant to § 1983 against Miami-Dade County and the Public Health Trust. To establish that a municipality is liable under § 1983, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

#### 1.     *Violation of a Constitutional Right*

In a prior Order, this Court determined that La Bruno alleges facts sufficient to state § 1983 claims against the individually named Defendants[6] based on their deliberate indifference to La Bruno's medical needs[7]. (D.E. #60) Thus, the Court finds that La Bruno has satisfied the first prong of a § 1983 municipal liability analysis by "demonstrat[ing] a municipal employee's subjective indifference and additionally that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *see also Gish v. Thomas*, 516 F. 3d 952, 955 (11th Cir. 2008) (determining that "without an underlying violation of

---

[6]The individually named defendants are Director Timothy P. Ryan, Director of the Miami-Dade County Department of Corrections; Captain Daniel Mera, Captain of the Miami-Dade Pre-Trial Detention Center; Nurse Sonia Grannum, Director of Patient Care Services for the Public Health Trust; and Dr. Robert Gonzalez, Chief Medical Compliance Officer/Coordinator for the Department of Corrections. These Defendants are either employees of the Miami-Dade County Department of Corrections or of the Public Health Trust.

[7] *See McElligot v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999) ("The Supreme Court has determined that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment.")

[prisoner's] constitutional rights [by a county employee] . . . [a county] cannot be liable on the ground that its policy caused a constitutional violation"). The Court adopts this determination from its previous Order on Motion to Dismiss (D.E. #60)

        2.      *Existence of Custom or Policy Constituting Deliberate Indifference*

La Bruno alleges that Miami-Dade County and the Public Health Trust failed to a remedy widespread and longstanding practice of providing inadequate medical treatment to inmates with serious medical needs incarcerated in the Miami-Dade County Department of Corrections. This failure to remedy this practice, La Bruno alleges, resulted in the formation of a *de facto* policy or custom of deliberate indifference to the medical needs of inmates. This *de facto* policy, La Bruno contends, led to his injuries, including a seven-month delay in his receipt of antiretroviral medication, which allowed his HIV to develop into AIDS.

A plaintiff who has alleged facts sufficient to establish a constitutional violation must then demonstrate that the municipality had a custom or policy that constituted deliberate indifference to the plaintiff's medical needs in one of three ways: (1) an official policy; (2) an unofficial policy manifested by repeated acts of a final policymaker; or (3) violations so widespread and longstanding that the county's final policymakers should have known about them. *Andrade v. Miami-Dade County*, No. 09-23220-CIV, 2010 WL 4069128, at *12 (S.D. Fla. Sept. 30, 2010). La Bruno asserts that violations "were so widespread and longstanding that [county] policymakers must have known and that they could be considered unofficial practice." *Id*. A widespread and longstanding practice established by a pattern of incidents is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F. 2d 1474, 1481 (11th Cir. 1991) (internal citations and quotations omitted). However, to establish a custom or policy by showing a widespread and longstanding practice, the incidents that a plaintiff alleges constitute that practice "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal citations and quotations omitted).

Case law offers guidance regarding a plaintiff's attempt to establish the existence of a widespread and longstanding practice from a pattern of incidents so widespread and longstanding existed as to rise to the level of a constitutional violation. In *Wellman v. Faulkner*, the Seventh

Circuit determined that deliberate indifference to medical needs could be demonstrated by "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff," as well as by proving that "there [were] such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population [was] effectively denied access to adequate medical care." *Wellman v. Faulkner*, 715 F.2d 269, 272–73 (7th Cir.1983). Likewise, in *Todaro v. Ward*, the Second Circuit determined that while "a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities." 565 F.2d 48 (2d Cir. 1977). Indeed, in *Harris v. Thigpen*, the Eleventh Circuit also determined that in "institutional level challenges to prison health care such as this one, systemic deficiencies can provide the basis for a finding of deliberate indifference." In *Thigpen*, Eleventh Circuit also determined that "repeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results." 941 F.2d 1495, 1505 (11th Cir. 1991).

Although *Wellman* and *Todaro* indicate that the incidents alleged to form a pattern need not themselves be constitutional violations, the Fifth Circuit's *Pineda v. City of Houston* suggests that whether prior incidents alleged to form a pattern had been determined to be constitutional violations was a relevant inquiry, especially when the number of alleged incidents was small. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (Eleven incidents of "equivocally" unconstitutional searches did not form a pattern of unconstitutional conduct "in one of the Nation's largest cities and police forces" because "the sample of alleged unconstitutional events [was] just too small" and because using offense reports was a "weak" approach because it "require[d] the City to defend cases within cases from historical records to justify searches conduced without a warrant"). Additionally, although in *Estate of Davis ex rel. McCully v. City of North Richland Hills*, the Fifth Circuit determined that the prior acts alleged to form a pattern should be "fairly similar to what ultimately transpired," the court also determined that "the specificity required should not be exaggerated." *City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (internal quotations omitted).

        **(a)**     **<u>Analysis: Incidents Forming a Widespread and Longstanding Pattern</u>**

Using a reasonable inference from the facts La Bruno alleges against Miami-Dade County and the Public Health Trust, the Court determines that La Bruno has stated facts sufficient to establish, at this stage, that widespread and longstanding incidents of inmates receiving inadequate medical care in the Miami-Dade County Department of Corrections existed sufficient to form a pattern. La Bruno alleges that Miami-Dade County and the Public Health Trust knew that inmates received inadequate care in the Miami-Dade Department of Corrections and that there was ongoing public scrutiny about the inadequate care the inmates were receiving. Specifically, La Bruno alleges that, from 2004 through 2007, ten inmates were provided inadequate medical treatment in the Miami-Dade County jail facilities.[8] Defendants argue that since none of the inmates had HIV as did La Bruno, their experiences cannot form the basis of a pattern because they lack the requisite similarity and specificity. In his Response, La Bruno concedes that, of the inmate experiences,

> two involve MRSA, one involved a significant body-wide rash and a staphylococcus infection, one involved a life threatening infection and renal failure, three involve diabetes, one involves over an eight month delay in providing surgery and five month delay in receiving dental care, one involves mental illness, and one involved Meniere's Disease, an inner ear disorder, [as well as] sarcoidosis, constipation, incontinence, and mental illness.

(Resp. D.E. # 37 at 5) However, he argues, "although these incidents do not involve HIV, they each demonstrate systemic issues with the provision of medical care in the jail system." He contends that the (1) failure to provide medical treatment, (2) failure to secure for inmates necessary specialized consults, and (3) failure to prescribe and administer medication—commonalities shared with La Bruno—demonstrate the presence of a widespread practice of deliberate indifference towards inmates with serious medical needs. Although the prior acts alleged by La Bruno to form a pattern should be "fairly similar to what ultimately transpired" during his incarceration, "the specificity required should not be exaggerated." *City of North Richland Hills*, 406 F. 3d at 383 (internal quotations omitted). The Court agrees that the issue can be framed as one a failure to provide

---

[8] These inmate experiences were taken almost verbatim from another case heard in this district, 08-civ-20065-CMA. La Bruno's Response directs the Court to that case, in which two motions to dismiss were denied because the court determined that plaintiff has alleged sufficient facts to survive a motion to dismiss. La Bruno contends that because his case is factually similar, the Court should deny the Defendants' Motion to Dismiss on the same grounds. Although La Bruno does not mention these prior lawsuits in his Third Amended Complaint, the Court notes that prior lawsuits can serve to put defendants on notice of the underlying facts alleged in the complaint.

inmates with serious medical needs adequate medical treatment, not just a failure to provide inmates who have HIV adequate medical treatment.

La Bruno's use of these prior inmates' experiences to establish a pattern is supported by *Wellman*'s determination that deliberate indifference to medical needs could be demonstrated by "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff," as well as *Todaro* and *Thigpen's* determination that "repeated examples of delayed or denied medical care" may indicate deliberate indifference.  Even if these instances in which inmates received inadequate care were not constitutional violations, *Thigpen's* language does not suggest that the "repeated examples of delayed or denied medical care" used to establish deliberate indifference on the part of a municipality must have been determined to be constitutional violations.  Moreover, although *Pineda* indicates that a plaintiff who alleges a comparatively low number of incidents to establish a pattern—La Bruno alleges ten—may have to show that those incidents were meritorious constitutional violations, *Pineda* was decided at the summary judgement stage, and, thus, was able to allege only eleven incidents even after discovery.  La Bruno, on the other hand, alleges ten incidents without the benefit of discovery.  He also alleges that newspaper articles about (1) the inadequate medical care inmates were receiving in the Miami-Dade Department of Corrections, (2) judges' orders for treatment being ignored, and (3) concerns regarding the professional competency of certain medical employees in the Department of Corrections, coupled with the Department of Justice's Investigation into possible constitutional violations, indicate that other incidents exist that contribute to the widespread and longstanding pattern.

### (b) Analysis:  Knowledge of Incidents Forming the Pattern

La Bruno alleges that Miami-Dade County and the Public Health Trust were deliberately indifferent to his medical needs by virtue of their knowledge of, and failure to remedy, the "widespread and longstanding" pattern of incidents involving inmates' failure to receive adequate medical treatment while incarcerated in the Miami-Dade County Department of Corrections.

A plaintiff attempting to establish that a widespread and longstanding pattern of incidents existed such that it rose to the level of a constitutional violations must allege facts indicating that a municipality had knowledge of the underlying incidents forming the pattern.  A plaintiff can allege that defendants had actual knowledge, which can arise from "discussions at council meetings or

receipt of written information." *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984). Alternately, a plaintiff can allege that defendants had constructive knowledge, which can be "attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*

Defendants contend that La Bruno failed to allege "any facts demonstrating that the Board had knowledge of these ten incidents and then failed to act." However, La Bruno's Third Amended Complaint alleges facts indicating that a County Commissioner, the County Manager[9], and the Mayor[10], had actual knowledge, via direct communications from inmates or others acting on their behalf, that inmates were receiving inadequate medical treatment and failed to remedy the inadequacy. Additionally, La Bruno alleges that Miami-Dade County and the Public Health Trust received constructive notice that inmates were not receiving adequate medical treatment via newspaper articles and an investigation initiated by the Department of Justice.

First, La Bruno alleges that Miami-Dade County and the Public Health Trust were provided constructive notice by a series of newspaper articles that challenged the adequacy of care that inmates were receiving, beginning with a 2004 article in the Miami New Times that criticized the competency of both a Department of Corrections medical professional and the Department of Corrections. In the article, the Dade County Medical Association criticized the Department of Corrections' choice of Chief Medical Compliance Officer, Dr. Robert Gonzalez, who was responsible for rendering determinations about the type of care and medications that inmates received despite the fact that medical license had been revoked in 1987 for "gross or repeated malpractice," and "incompetency." The article also criticized the Miami-Dade Department of Corrections' failure to follow the Department of Health's recommendations for controlling the MRSA outbreak in its jail facilities. Next, a 2007 Miami New Times article reported that poor

---

[9]La Bruno alleges that the County Manager knew during a time when the County Manager was a final policymaker for the County.

[10]La Bruno alleges that the Mayor knew during a time when the Mayor was a final policymaker for the County.

11

medical care in the Miami-Dade County Department of Corrections had contributed to multiple inmate deaths in the jails and that, in a letter to Director Timothy Ryan, a nurse employed by the Public Health Trust accused a high-ranking nurse of endangering inmates by not following proper techniques and procedures. A third Miami-New Times article reported that Miami-Dade County ignored judges' orders to provide inmates treatment. La Bruno also alleges that Miami-Dade County indicated its specific awareness of the inadequacy of treatment that HIV/AIDS stricken inmates were receiving in the Miami-Dade Department of Corrections by adopting a resolution on March 6, 2007, directing the County Manager to report to the Board of County Commissioners on the status of HIV/AIDS testing, treatment and follow-up care inmates in the Miami-Dade County Department of Corrections's. Finally, La Bruno alleges that the U.S. Department of Justice initiated an investigation on April 5, 2008 into possible ongoing constitutional violations in the Miami-Dade Department of Corrections, including violations arising from inmates' receipt of inadequate medical care. La Bruno contends that the Miami-Dade County Mayor's response to this investigation with a memoranda outlining a plan to correct problems at the jail indicates that there were ongoing violations.

### 3. *Custom or Policy Caused the Constitutional Violation*

La Bruno alleges facts sufficient to establish that Miami-Dade County and the Public Health Trust's *de facto* custom or policy of deliberate indifference to the medical needs of inmates caused a violation of his constitutional rights in the form of deliberate indifference to his serious medical need. In a municipal liability analysis, a plaintiff shows that a custom or policy caused his constitutional violation by showing that "the objectionable municipal policy was the "moving force" behind the plaintiff's injury. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citing *Bd. of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 408 (1997)).

La Bruno alleges that certain prison officials were deliberately indifferent to his medical needs and that their deliberate indifference arose from a widespread and longstanding pattern of similar incidents of which Miami-Dade County and the Public Health Trust were aware but failed to remedy. Causation follows naturally from both of these allegations. La Bruno received inadequate treatment for his medical needs in the Miami-Dade Department of Corrections, as did other inmates before him, and Miami-Dade County and Public Health Trust officials, including final

policymakers, were aware that inmates were receiving inadequate treatment because of direct communications from inmates, information in the public domain, and a Department of Justice Investigation into possible constitutional violations. It is plausible that Miami-Dade County and the Public Health Trust's failure to respond to the knowledge that inmates were receiving inadequate treatment in the Miami-Dade Department of Corrections resulted in the failure to provide the medical treatment that La Bruno needed. The failure to provide adequate care for his medical needs while in the Miami-Dade Department of Corrections would naturally occur if Miami-Dade County and the Public Health Trust failed to correct the practice of not providing inmates with adequate treatment.

Given the alleged facts and the reasonable inferences drawn from them, La Bruno alleges a sufficient factual background to survive Miami-Dade County and the Public Health Trusts' Motion to Dismiss on the issue of § 1983 municipal liability claims.

### 4. *Theories of Liability Under § 1983*

However, La Bruno is limited in pursuing those claims against Miami-Dade County and the Public Health Trust to those theories for which he alleges sufficient facts. La Bruno alleges that Miami-Dade County and the Public Health Trust "failed to remedy" or "permitted a pattern of" denial of medical care specifically to inmates with serious medical problems, including those diagnosed with the HIV virus. The Court construes this as his primary theory of liability. La Bruno includes additional sub-theories of liability in his single counts against Miami-Dade County and the Public Health Trust, but only the first sub-theory, that Defendants "failed to remedy" or "permitted a pattern of" denial of medical care by "(i) ignoring or failing to react to a widespread health or safety problem in connection with such inmates," is sufficiently supported by the alleged facts.

La Bruno additionally alleges that Defendants "failed to remedy" or "permitted a pattern of" denial of medical care by: (ii) failing to adopt and/or enact reasonable written rules regulations, protocols, standards, and other guidelines pertinent to the diagnosis, care, and treatment of inmates with serious medical needs; (iii) failing to adequately attend, supervise, monitor, educate, and follow inmates with serious medical needs; (iv) failing to hire and retain competent and knowledgeable medical staff and ensure that only competent and knowledgeable medical staff were assigned to positions providing medical care to inmates with serious medical needs; (v) failing to provide

13

appropriate and sufficient training and education for its medical personnel in regards to inmates with serious medical needs; and (vi) failing to discipline or prosecute known instances where medical treatment was being denied to inmates with serious medical needs. However, La Bruno has not alleged facts sufficient to establish a widespread and longstanding practice based on these additional sub-theories. As such, La Bruno is limited to proceeding on his § 1983 claims against Miami-Dade County and the Public Health Trust based on the theory that they "failed to remedy" or "permitted a pattern of" denial of medical care by ignoring or failing to react to a widespread health or safety problem in connection with such inmates.

Additionally, La Bruno alleges in the fact section of his Third Amended Complaint that the Pre-Trial Detention Center and the Training and Treatment Center were inadequately staffed with medical professionals. He also alleges, as part of his § 1983 claims against Miami-Dade County and the Public Health Trust and his negligence claim against Miami-Dade County, that the County and Trust failed to maintain adequate levels of staff in its jail facilities. The Court recognizes that under-staffing at a prison can form a basis for a court to find that the county had a policy of under-staffing that led to deliberate indifference to the medical needs of prisoners. *Anderson v. City of Atlanta*, 778 F.2d 678, 687 n. 12 (11th Cir. 1985). However, as La Bruno offers only this conclusory allegation without any underlying facts to support his assertion, such as the actual staffing numbers, the Court will not consider this argument as a basis for establishing § 1983 or state law liability. Thus, La Bruno is not permitted to proceed on theories of under-staffing for either his § 1983 claims or his state law claims.

      C.      **State Law Claims Against Miami-Dade County and the Public Health Trust**

La Bruno alleges that Miami-Dade County and the Public Health Trust are liable under theories of common law negligence and medical negligence, respectively, for the injuries he sustained as a result of his seven-month denial of antiretroviral medication.

Governmental entities are immune from tort liability and entitled to sovereign immunity under Florida Statute § 768.28 for discretionary policy-making or planning activities; however, "immunity from tort liability is waived for negligent activities that are operational and for which a common law duty of care exists." *Lee v. Department of Health and Rehabilitative Services*, 698 So.2d 1194, 1198 (Fla. 1997). A discretionary function is one that which the "involve[s] an exercise

of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1117–18 (11th Cir. 2005) (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999). An operational function is one that merely reflects a secondary decision as to how those policies or plans will be implemented and is not necessary to or inherent in policy or planning decisions. *See id*.

La Bruno alleges that Miami-Dade County breached its duty to provide him safe and humane treatment and adequate medical care, while he was incarcerated in the Miami-Dade County Department of Corrections, by denying him antiretroviral treatment for seven months, the result of which was that, among other physical injuries, his HIV developed into AIDS. Likewise, La Bruno alleges that the Public Health Trust is liable to him for medical negligence under Fla. Stat. § 766.102(1) because it breached the prevailing professional standard of care for health care providers by failing to timely diagnose the extent of La Bruno's HIV and by failing to timely treat his HIV by prescribing and administering the necessary antiretroviral medication. Defendants contend that the state claims against Miami-Dade County and the Public Health Trust should be dismissed because La Bruno has failed to state sufficient facts to support his claims, or, in the alternative, because La Bruno's allegations implicate governmental decisions on funding and staffing that are discretionary functions entitled to sovereign immunity protection under Fla. Stat. § 768.28.

La Bruno's allegations against Miami-Dade County are numbered in his Third Amended Complaint as 458(a)-(v); his allegations against the Public Health Trust are numbered as 465(a)-(r). In addressing his claims against Miami-Dade County and the Public Health Trust, La Bruno concedes that paragraphs 458(u) and 465(q) are barred by sovereign immunity but contends that the remainder of the claims against Miami-Dade County and the Public Health Trust involve operational, rather than discretionary, functions. (Resp. D.E. #37 at 19)

La Bruno's allegations 458(a)-(r) (against Miami-Dade County) and allegations 465(a)-(n) (against the Public Health Trust) relate to the medical care, or lack thereof, that La Bruno received while incarcerated in the Pre-Trial Detention Center and Training and Treatment Center. Those allegations can be construed as involving operational decisions, as La Bruno does not seem to allege that Miami-Dade County and the Public Health Trust had no mechanisms in place for treating

inmates who needed medical care that they should have established (which could be construed as involving a discretionary function); rather, he alleges that he was not getting the medical care he needed because of institutional failings despite mechanisms for treatment that were in place (which can be construed as involving operational functions). La Bruno can proceed on these theories, with the exception of allegation 458(c), regarding Miami-Dade County's failure to "staff," a theory for which he does not allege sufficient facts.

The additional allegations found in paragraphs 458(s)-(t) and 465(o)-(p) are grounded in theories of negligent hiring and negligent retention, which are recognized in Florida courts. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1163 (11th Cir. 2005); *Willis v. Dade County School Bd.*, 411 So.2d 245, 246 (Fla. App. 3 Dist. 1982); *Mallory v. O'Neil*, 69 So.2d 313, 314 (Fla. 1954). To hold a government entity liable for the tort of negligent hiring or retention "a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee." *Willis*, 411 So. 2d at 246, n. 1. To hold Miami-Dade County or the Public Health Trust based on these theories, La Bruno must allege that they knew of an employee's "harmful propensities." The only employee La Bruno names in his Third Amended Complaint with any alleged "harmful propensities" about which Miami-Dade County and the Public Health Trust might have been aware is Dr. Robert Gonzalez. Dr. Gonzalez's medical license had been revoked for gross malpractice and incompetence, and the Miami New Times had written an article about the Dade County Medical Association's criticism of the Department of Corrections' hiring an unlicensed doctor to be its Chief Medical Compliance Officer. The Court finds that this factual allegation is sufficient to support a claim against Miami-Dade County and the Public Health Trust for negligent hiring or negligent retention. Finally, to the extent that allegations 458(v) and 465(r) involve a failure to "adopt" policies, the Court construes those allegations as involving a discretionary function; however, since the allegation also alleges a failure to enforce policies, the allegations can arguably be construed involving operational acts. Thus, in pursuing his claims under 458(v) and 465(r), La Bruno can only proceed on the "failure to enforce" theory.

To the extent that La Bruno seeks to hold Defendants liable for discretionary decisions, the Court agrees that the negligence claims 458(u) and 465(q) are barred by sovereign immunity. However, the Court agrees that allegations 458(a)-(t) and 465(a)-(p), with the exception of La

Bruno's allegations concerning a failure to staff, are supported by sufficient facts to state claims for negligently implemented operational acts. Additionally, allegations 458(v) and 465(r) are restricted to "failure to enforce" theories. At this stage, it is not apparent, with the exception of the excluded theories, that La Bruno's negligence claims are barred by sovereign immunity.

### III.  CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss (D.E. #35) is DENIED with regard to Plaintiff's § 1983 claims and state law claims against Miami-Dade County and the Public Health Trust.  However, Plaintiff is limited to proceeding on these claims in accordance with the restrictions set forth in this Order.

DONE and ORDERED in Chambers, Miami, Florida, on March 23, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record